UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMARINA JOHNSON,

                    Petitioner,                              Case Number 07-14297
                                                       Honorable David M. Lawson

v.

CLARICE STOVALL,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jamarina Johnson was convicted by a judge sitting without a jury in the Wayne County, Michigan circuit court of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. She presently is in the custody of the Michigan Department of Corrections at its Women's Huron Valley Correctional Facility in Ypsilanti, Michigan serving a sentence of 81 to 135 months for assault, to be followed by a two-year prison term for the firearm conviction. She has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that her convictions and sentences are unconstitutional because the trial evidence was insufficient to convict her of assault with intent to commit murder, and the trial court improperly increased her minimum sentence by relying on facts that were not proved beyond a reasonable doubt. The respondent has filed an answer to the petition, asserting that the claims lack merit and do not warrant habeas relief. The Court agrees. Therefore, the petition will be denied.

I.

The petitioner's convictions resulted from an altercation with Sunnetta Mack in Detroit, Michigan on September 3, 2004, which ended with the petitioner firing several shots into the car Sunnetta was driving. At the bench trial Sunnetta testified that she drove her car to a carwash accompanied by her five children and a friend. According to Sunnetta, the children's father, Deizon Mack, planned to take one of the children for a hair cut and arranged to retrieve the child at the carwash. When Sunnetta arrived, she observed the petitioner arguing with Deizon. She pulled up in front of the petitioner's car, blocking the carwash exit.

Sunnetta and the petitioner had a stormy history, which stemmed from Deizon's relationship with both women. The petitioner had threatened to kill Sunnetta and her children on two or three different occasions.

Sunnetta testified that the petitioner returned to her car and backed up to exit onto the street, yelling to the victim that she and her children were ugly and she wished they were all dead. Sunnetta said, "Why don't you get out then," to which the petitioner responded, "No. I got something better than that." Tr. 5/24/2005 at 16. Sunnetta took offense and drove down the street alongside the petitioner, exchanging insults.

Sunnetta testified that the petitioner rammed her car three times, attempting to push the car into oncoming traffic. She said that she then heard the "ping" of shots fired at her car. *Id.* at 20. Sunnetta saw a police car on a street they were approaching and made a U-turn to attract the police officer's attention. The petitioner fired additional shots into the car as she passed Sunnetta's car in the opposite direction. One of the bullets struck a child's elbow. Another bullet lodged into the driver's headrest.

The petitioner testified on her own behalf.  She said that Sunnetta had threatened her in the past, and she suspected that the petitioner had put bullet holes into her vehicle previously.  The petitioner asserted that on the day in question, Deizon gave her a gun at the car wash.  The petitioner contended that it was Sunnetta who rammed her car.  She also testified:

> A.   When I was making a left-hand turn on French Road, she then rammed into my car.  When she rammed into my car, I proceeded to drive straight, and our cars still — her car was pressing up on the door, so it scratched.  Then she proceeded to drive in front of me, did a U turn, and came back face-on, trying to ram into me face-on.  Then I proceeded to yank my car out of the way so we wouldn't hit head-on.  I shot at her car, back at it, as I was driving.
> Q.   You don't deny that you shot at the car, do you?
> A.   No, I do not.
> Q.   Why did you?  In your own words, why did you?
> A.   Because I was scared.

Tr. 5/24/2005 at 36.

The trial judge found the petitioner guilty of assault with intent to murder and possession of a firearm during the commission of a felony.  Following sentencing, the petitioner appealed her convictions and sentences to the Michigan Court of Appeals, raising two claims:

> I.   There was insufficient evidence at trial to support the trial court's guilty verdict since defendant was acting in self-defense when being pursued by Sunnetta Mack.
>
> II.   Defendant is entitled to resentencing when the statutory sentencing guidelines were misscored, which affected the sentencing guideline range.

That court affirmed her convictions and sentences, and the state supreme court denied leave to appeal. *People v. Johnson*, No. 264829, 2006 WL 3613726 (Mich. Ct. App. Dec. 12, 2006), *lv. den.*, 477 Mich. 1115, 730 N.W.2d 221 (Apr. 24, 2007).

The petitioner now seeks a writ of habeas corpus on the same grounds raised in the state appellate courts.  The respondent filed an answer contending that the claims are without merit and the sentencing claim presented a non-cognizable issue of state law.

<div align="center">II.</div>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

<div align="center">-4-</div>

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

-5-

*Id.* at 409-11; *see also Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489-90 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

## A.

The petitioner challenges the sufficiency of the evidence presented on the issue of her intent to kill Sunnetta Mack. She argues that the State failed to show that essential element of the crime of assault with intent to murder. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [s]he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Ibid.* (citing *Gall v. Parker*, 231 F.3d 265, 286( 6th Cir. 2000)). The Court need not be convinced

that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

Under Michigan law, the elements of assault with intent to commit murder in Michigan are "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder." *Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (1998)). The intent element for this crime is not the same as the "malice" element necessary to prove murder. Under state law, malice may be proved by showing an intent to kill, but it also may be proved by showing an intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm. *See People v. Aaron*, 409 Mich. 672, 714, 299 N.W.2d 304, 319-20 (1980). To prove the crime of assault with intent to murder, the state must show that at the time of the assault, the defendant harbored the actual intent to kill. *People v. Taylor*, 422 Mich. 554, 567, 375 N.W.2d 1, 7 (1985) (citing *Maher v. People*, 10 Mich. 212, 217-18 (1862); *Roberts v. People*, 19 Mich. 401, 415-16 (1870)). Of course, that intent may be proved by circumstantial evidence. *Id.* at 568, 375 N.W.2d at 8 (observing that the jury may consider "[t]he

-7-

nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made" (quoting *Roberts*, 19 Mich. at 415-16)).  The intent to kill may be inferred from the use of a lethal weapon. *In re Guilty Plea Cases*, 395 Mich. 96, 130, 235 N.W.2d 132, 145 (1975).

Michigan law permits a person in some circumstances to use deadly force in self-defense if she honestly and reasonably believes that she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482, 456 N.W. 2d 10 (1990)). However, a person is not entitled under Michigan law to use any more force than is necessary to defend herself. *See People v. Kemp,* 202 Mich. App. 318, 322; 508 N.W. 2d 184 (1993).  In addition, Michigan law requires a person to retreat to safety, if it is possible to do so, before using deadly force in self-defense. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 602 (E.D. Mich. 2001) (citing *People v. Mroue*, 111 Mich. App. 759, 315 N.W. 2d 192 (1981)).

The Michigan Court of Appeals rejected the petitioner's insufficiency of evidence claim as follows:

> Defendant first argues that the prosecution failed to show intent.  Defendant testified that she did not intend to murder Sunnetta Mack, and wanted only to stop Mack from ramming her vehicle.  However, the prosecution presented evidence that defendant threatened Mack's life prior to this shooting, defendant rammed Mack's car, trying to push her into oncoming traffic, and defendant fired several shots on two separate occasions at Mack's car, knowing that Mack, her friend Nicola Wilcoxson, and five children were riding in it.  One of the bullets fired resulted in injury to Mack's son. Another bullet went through Mack's headrest.  Taken together, the prosecution's evidence was sufficient to prove defendant's intent to kill Mack.

-8-

Defendant also argues that the prosecution failed to disprove her claim of self-defense. When self-defense involves the use of deadly force, the defendant must honestly and reasonably believe that his or her life is in imminent danger or that there is a threat of serious bodily injury, *People v. Fortson*, 202 Mich. App 13, 19-20; 507 NW2d 763 (1993), and that deadly force is necessary, *People v. Riddle*, 467 Mich. 116, 119; 649 NW2d 30 (2002). "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *Fortson*, *supra* at 20.

Defendant claimed she shot at Mack because she was afraid Mack would ram her car, but defendant admitted she shot at Mack as Mack was driving away from her, after any apparent danger had already passed. Thus, the trial court was free to reject the claim that defendant acted in self-defense.

*Johnson*, 2006 WL 3613726, at *1.

It is difficult to quarrel with that reasoning. The evidence shows that the petitioner fired multiple gunshots into a vehicle occupied by two adults and five children. The petitioner acknowledged that fact at trial. That evidence alone supports an inference of an intent to kill. What's more, the bad blood that flowed between the petitioner and Sunnetta Mack established a motive that supported a conclusion that the petitioner actually intended to kill Mack when she fired the gun at her car.

In addition, a reasonable fact-finder could have rejected the petitioner's claim of self-defense. The petitioner had testified that she fired as the victim drove away from her vehicle, after the need to defend herself had subsided. There was no evidence that the petitioner attempted to retreat or elude Sunnetta Mack before opening fire. Because Mack was unarmed when petitioner shot at her and the petitioner took no steps to retreat or otherwise avoid the victim, a reasonable factfinder could find beyond a reasonable doubt that the petitioner did not honestly or reasonably fear that she was in imminent danger of death or serious injury from Mack and that she used far more force than necessary to defend herself.

-9-

When viewed in a light most favorable to the prosecution, the evidence in this case was sufficient to support a finding by the judge that the petitioner possessed the actual intent to kill, and the State disproved the defense of self-defense beyond a reasonable doubt. Therefore, the Michigan Court of Appeals's rejection of the petitioner's insufficiency of evidence claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. The petitioner is not entitled to habeas relief on her first claim.

B.

The petitioner next argues that she is entitled to resentencing when the statutory sentencing guidelines were misscored, which affected the sentencing guideline range.

The petitioner alleges that the state trial court improperly departed above the sentencing guidelines range without having substantial and compelling reasons to do so, and the trial court incorrectly scored her sentencing guidelines by using factors that had not been submitted at trial and proved beyond a reasonable doubt or admitted to by the petitioner.

A claim that the state trial court incorrectly scored, calculated, or applied the state legislative sentencing guidelines is not a cognizable claim for federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, a claim that the trial court misscored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999).

-10-

The petitioner's contention that her sentence was increased based upon facts neither proven beyond a reasonable doubt nor admitted by her fairs no better.  The petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support her position.  However, the claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence.  But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum.").  This Court is bound by that decision.

Under state law, the petitioner's minimum sentence for assault with intent to murder was less than the maximum sentence authorized by the statute: life in prison.  Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial fact finding, no Sixth Amendment violation occurred.  The petitioner is not entitled to habeas relief on her second claim.

### III.

The state court decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that she is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [dkt # 1] is

**DENIED**.


                                        s/David M. Lawson
                                        DAVID M. LAWSON
                                        United States District Judge


Dated:   January 10, 2011


<div style="border:1px solid black; width:50%; margin:auto; text-align:center;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on January 10, 2011.

                                    s/Deborah R. Tofil
                                    DEBORAH R. TOFIL

</div>


-12-